# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| STEVEN R. DELK, | ) | |
|     Plaintiff, | ) | Case No. 7:16-CV-00554 |
| | ) | |
| v. | ) | Memorandum Opinion |
| | ) | |
| BRIAN MORAN, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | United States District Judge |
| | ) | |

Steven R. Delk, also known as Ja-Quitha "Earth" Camellia, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging various violations of his constitutional rights while housed at the Red Onion State Prison ("Red Onion").[1] Specifically, Delk alleges in his verified complaint that certain officials denied him medical treatment for serious mental health needs in violation of his Eighth Amendment rights, and denied him "post-deprivation" remedies in violation of his Fourteenth Amendment rights. The defendants who filed a motion to dismiss are as follows: Brian Moran, Secretary of Public Safety; E.R. Barksdale, Warden of Red Onion; H. Ponton, Regional Administrator for the Western Region of Virginia Department of Corrections ("VDOC"); M. Elam, Regional Administrator for the Western Region VDOC; Pough, Regional Operations Officer for the Western Region of VDOC; Durbin, Prison Rape Elimination Act (PREA) Coordinator for VDOC; McDaniels, SIU Investigator; Morehart, former State Inspector General; Farrington, PREA Coordinator at VDOC; Messer, Grievance Coordinator at Red Onion; Parr, Regional Ombudsman for the Western Region of VDOC; Dr. Malone, VDOC Mental Health Director; N.H. Scott, VDOC Deputy Director of Administrations; and Dr. McDuffie, psychiatrist

---

[1]     Delk is currently housed at Wallens Ridge State Prison.

1

employed by Zafar Ahsan, M.D. and a contractual service provider at Wallens Ridge. *See* Mot. to Dismiss, at 1-2, Docket No. 64.[2]

Delk responded to the motions to dismiss and this matter is ripe for disposition. Upon review of the record, I conclude that defendants' motion to dismiss must be granted as to Messer, Elam, Parr, and Pough, granted without prejudice as to Barksdale, Durbin, Fairington, Malone, McDaniels, Moran, Morehart, Ponton, and N.H. Scott, Docket No. 63, and denied in part and granted in part as to Dr. McDuffie, Docket No. 48.

## I.

Delk asserts a multitude of claims. Delk alleges that he "has always identified as woman/male and was diagnosed with gender dysphoria in 1987," taking testosterone blockers, estrogen enhancers, and other self-prescribed hormone medication. Delk alleges that he "has continuously been denied meaningful [ ] mental health treatment since 2013." On March 21, 2015, he submitted an informal complaint seeking mental health treatment, which was denied. Delk alleges that Qualified Mental Health Professional ("QMHP") Huff denied Delk's request for treatment on March 27, 2015, based on "his personal decision" and not for any medical reason. On April 6, 2015, Delk submitted a grievance challenging the QMHP decision and again seeking mental health treatment. Grievance Coordinator Messer denied the grievance on the ground that seeking mental health treatment is a request for services and, thus, cannot be grieved. Delk appealed the intake decision on April 9, 2015, to Regional Ombudsman Parr, but the intake rejection was upheld. Compl. ¶¶ 31-34, 54 Docket No. 1.

---

[2] There are remaining defendants who filed motions for summary judgment, which the court will address separately; these defendants are as follows: Nurse Phipps, Nurse Yates, R. Adams, D.M. Fleming, L. Mullins, M. Mullins, D. Trent, T. Huff, Fletcher, N. Gregg, and P. Scarberry.

While Delk was seeking mental health treatment for his gender dysphoria, he alleges he was subjected to ongoing sexual abuse by correctional officers. Delk alleges Correctional Officer Adams verbally and physically assaulted him, fondling Delk, and offering "quid pro quo sexual propositions" on a regular basis. Delk consistently refused Adams' advances and, as a result, Adams threatened Delk with bodily harm for rejecting him. On June 22, while Adams was the correctional officer in charge, Adams referred to Delk as a "dumb ass nigger and dick sucking nigger" and threatened to starve Delk. Following Adams' threats, Delk reported Adams to Unit Manager Turner. In fear of Adams, Delk alleges he wrote grievances, informal complaints, letters, and verbally reported Adams' behavior. As a result, Delk alleges that this caused Adams to threaten rape, write false disciplinary offenses on Delk, refuse Delk recreation time and showers, and falsify the segregation unit chart to state that Delk refused those activities. Compl. ¶¶ 56-65, Docket No. 1.

On July 11, 2015, Adams threatened to enter Delk's cell and "beat the black off of him and stomp [Delk's] nasty pussy in." Taking the threat seriously, Delk wrote an affidavit that same day stating what Adams had said and that Delk "feared for his safety." On July 12, 2015, Adams entered Delk's cell, called him names, and later returned to "pepper spray" his cell without justification when Delk had asthma. Delk went into a "mental meltdown of fear," wrote affidavits, although he does not allege that he gave the affidavits to anyone, and told other correctional officers to stop Adams. After Delk was allowed to exit his cell, the Sergeant appeared. Delk asked why there was not a camera during the search. The Sergeant responded he would go get a camera and told Adams to write Delk some charges. A camera was not present until after Delk was returned to his cell. Compl. ¶¶ 66-81, Docket No. 1.

On July 12, 2015, Adams wrote two disciplinary offense reports against Delk, which Delk alleges included false allegations "for the purpose of inflicting a punishment on [him.]" Delk was found guilty of these disciplinary charges. Delk alleges he has suffered psychological trauma and stigmatization because of both the false disciplinary charges and the grievances he filed against Adams. Compl. ¶¶ 82-92, Docket No. 1.

Although Delk was afforded a hearing for the disciplinary charges, Delk alleges he was denied proper due process because the evidence used against him was false. Delk alleges that Fleming and Mullins deprived him of a hearing that complied with his procedural and substantial due process rights because he was not notified of the substance of the reporting officers' testimony, prevented from cross-examining a witness, and denied the opportunity to present rebuttal or witness evidence when the correctional officers changed the description of the offense at the hearing. Delk further alleges that defendants Mullins, Barksdale, and Ponton's interpretation of the offense for which Delk was charged failed to include the description of Delk's actions as put forth by Adams, indicating to Delk that Delk did not violate any rule or policy. Delk alleges that the policy in question, Virginia Department of Corrections ("VDOC") offense code 111/198B was being used to justify assaults on inmates, including the use of "pepper spray" and sexual harassment, all of which Barksdale, Moran, and Ponton were aware.

In relation to Delk's disciplinary hearing, Delk alleges that Barksdale, Elam, L. Mullins and M. Mullins conspired to punish Delk and deprive him of due process and an adequate remedy regarding the disciplinary charge. Delk alleges that defendants Barksdale, Ponton, Messer, Parr, Pough, Moran failed to ensure that Delk had a "post-deprivation remedy." Delk further alleges his Prison Rape Elimination Act ("PREA") grievances were not properly addressed at Red Onion, including a claim that he was being sexually abused in the stairway fire

4

escape in Building C-1. Delk alleges that Durbin, Fairington, Moran, Barksdale, Ponton, Pough, Huff, Elam, Morehart, and McDaniel did not help Delk. He further alleges that defendants Barksdale, Moran, Ponton, Durbin, and Fairington were aware of Delk's sexual abuse and failed to take action to protect Delk from the "obvious harm." Compl. ¶¶ 93-104, Docket No. 1.

Following the July 12 incident when Adams entered Delk's cell, Delk continued to seek mental health treatment. On July 14, 2015, Delk "begged [QMHP Trent] for treatment to battle the emotional and physical strain of the day to day harassment [and] ridicule[.]" Delk submitted another grievance, but does not specify when, and was granted a private session with QMHP Trent. Delk expressed to QMHP Trent that he was losing his self-worth "because of the continuous verbal sexual harassment and fondling and physical assault and threats" by the Correctional Officers "because" of his sexuality, race, and religion, and submitting grievances on their conduct. Compl. ¶¶ 35-36, Docket No. 1.

On August 9, 2015, Delk submitted another informal complaint seeking mental health treatment to cope with the negative effects of the sexual assaults and harassment. This prompted a series of requests to have psychiatric treatment, which Delk alleges QMHP Trent refused "every time." On August 13, 2015, QMHP Trent informed Delk that prison psychiatrist Dr. McDuffie determined Delk did not need psychiatric treatment despite Delk having "never spoken or interacted with Dr. McDuffie since being at [Red Onion.]" QMHP Trent told Delk that he did not see a problem because Delk was "very articulate" and was "not displaying the signs associated with mental illness." Delk alleges that QMHP Trent told as much to Dr. McDuffie, and that Dr. McDuffie's determination that Delk did not need psychiatric treatment was not based upon any personal diagnosis or evaluation of Delk.

On August 20, 2015, Delk submitted another grievance seeking mental health treatment, but it was denied at intake by Grievance Coordinator Messer. The next day, Delk appealed the intake decision and Regional Ombudsman Parr upheld the intake rejection. Delk alleges that defendants Messer and Parr "on over twenty occasions denied [Delk] intake of [his] grievances" and, therefore, denied him an adequate post-deprivation remedy despite Delk having followed the VDOC grievance procedure properly. Delk alleges that Messer and Parr's interpretation of Delk's grievances and denying them at intake denied Delk mental health treatment for his retaliation and sexual abuse. Delk alleges that Messer and Parr rejected his grievances in retaliation for Delk repeatedly using the grievance procedure to report various prison officials' misconduct. Compl. ¶¶ 38-43, 146-150, Docket No. 1.

By November 12, Delk described to QMHP Trent that the correctional officers' sexual harassment of him had escalated. Delk continued to seek treatment for his self-diagnosed gender dysphoria, nightmares, night sweats, anxiety attacks, physical tremors, sleep deprivation, fits of crying, depression, and "mental sexual roller coaster." Delk broadly alleges that QMHP Trent, Huff, Fletcher, and Dr. McDuffie were aware of Delk's sexual identity gender disorder, sexual harassment, sexual assaults, and long-term placement in segregation housing, yet still classified him as "no treatment no mental health needs" ("NIHO"). Compl. ¶¶ 44-47, Docket No. 1.

Delk alleges that Moran, Barksdale, and Ponton violated his Eighth and Fourteenth Amendment rights by failing to protect "those under their care" despite knowing Delk lived under daily threat of sexual abuse. Delk alleges that N.H. Scott created and enforced the prison policy and procedure that Dr. McDuffie and other defendants relied on to justify denying treatment to Delk. Because of the policy, Delk alleges that other prison official defendants told him, "As NIHO [no treatment no mental health needs] you are not a priority according to

policy." Delk alleges that N.H. Scott, Moran, Dr. Malone, Dr. McDuffie enforced such policies, causing Delk "horrific suffering" and enabling other defendants to deny Delk mental health treatment.

Delk alleges that he was harmed because N.H. Scott, Moran, Dr. Malone failed to employ a full-time psychiatrist, leading to underqualified social counselors at Red Onion handling Delk's mental health issues and facilitated Delk's "downward[ ] slide [ ] exacerbating his pre-existing disorder." Specifically, Delk alleges that N.H. Scott and Dr. Malone failed to provide an effective method for ensuring the competence of their mental health staff, the ratio of mental health staff to inmates, adequate staff in general and inmate "access to competent care[.]" Delk further alleges these defendants employ "deficient" mechanisms for screening, evaluating, and diagnosing Delk for mental illness such that it supplants his "lawful punishment with a punishment of their own[.]"

Delk alleges several conspiracy claims. Delk alleges that Barksdale, Messer, Parr, Fleming, and Ponton conspired to cover up Adams' and Mullins' sexual, religious, and racial abuse of Delk. He further alleges that McDaniels, Morehart, Durbin, Farrington, Adams, and M. Mullins conspired to cover up Adams and M. Mullins' sexual abuse of Delk. Delk alleges M. Mullins, L. Mullins, Barksdale, Elam, and Pough conspired to protect M. Mullins' attempts to "punish and deter" Delk due to his race, religion, and sexuality. Delk alleges Messer and Parr conspired to protect Adams and M. Mullins' "unprofessional conduct" due to Delk's race, religion, and sexual orientation. Delk alleges that Barksdale, Elam, L. Mullins, and M. Mullins conspired to punish Delk and deprive him of due process and an adequate remedy regarding the disciplinary charge Officer Mullins wrote. Delk further alleges that Dr. McDuffie conspired

with QMHP Trent, Huff, Dr. Malone, and Fletcher to deprive Delk of his mental psychological well-being by employing deficient medical screening and evaluating mechanisms.

For his alleged constitutional violations, Delk seeks declaratory relief, injunctive relief, and compensatory damages in the amount of $367,000. Additionally, Delk moves to change his name to Ja-Qui'tha "Earth" Camellia and to amend the caption to reflect the name change.

## II.

### A. Motion to Dismiss Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is

plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

**B.     Official Capacity Damages**

As a threshold matter, to the extent Delk brings this action against the defendants in their official capacities seeking monetary damages, such claims are not cognizable under § 1983. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989). Because the prison official defendants in their official capacities are not "persons" who can be sued under § 1983 for monetary damages, I must dismiss Delk's claims against them seeking monetary relief.

**C.     Personal Involvement**

To begin, I must address whether Delk alleges sufficient personal involvement with respect to the following defendants: Secretary of Public Safety Moran; VDOC Mental Health Director Dr. Malone; VDOC Deputy Director of Administrations N.H. Scott; former State Inspector General Morehart; Warden Barksdale; Regional Administrator Elam; Regional Administrator Ponton; Regional Operations Director Pough; Regional Ombudsman Parr; Grievance Coordinator Messer; and PREA Coordinator Farrington.

To assert liability under § 1983, Delk must show direct personal involvement by each defendant. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). For a non-medical prison official to be liable under § 1983, "it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th

Cir. 1985). Generally, the failure of a supervisory prison official to respond to an inmate grievance, without additional personal involvement in the grieved situation, is not sufficient to establish the supervisor's liability under § 1983. *Green v. Beck*, 539 F. App'x 78 (4th Cir. 2013). It is well established that a government official cannot be held liable under § 1983 solely on the basis of *respondeat superior*. *See, e.g., Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Nonetheless, a supervisory official may be held liable under a supervisory liability theory if that official's "'edicts or acts may fairly be said to represent official policy,' and if [he] ha[s] promulgated a custom or policy that caused a constitutional violation." *Newbrough v. Piedmont Reg'l Jail Auth.*, 822 F. Supp. 2d 558, 582 (E.D. Va. 2011) (quoting *Monell*, 436 U.S. at 694). To prove supervisory liability, a plaintiff must show: "(1) that the supervisor had actual or constructive knowledge that [his] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)) (second alteration in original).

Even construing Delk's claims liberally and taking all factual allegations in the light most favorable to him, there are pleading deficiencies for most of Delk's claims.

Delk's broad allegation that Moran and Barksdale failed to ensure that Delk had a "post-deprivation remedy" does not state sufficient personal involvement in Delk's constitutional violations. However, Delk alleges that Moran and Barksdale were aware that prison officials were using VDOC offense code 111/198B to justify assaults on inmates. Similarly, Delk argues

that N.H. Scott and Dr. Malone created procedures and policies that contributed to the denial of Delk's mental health treatment. Delk alleges Barksdale, Moran, N.H. Scott, and Dr. Malone had more than general supervisory oversight, and that their creation or implementation of a policy or procedure caused Delk's constitutional violation. *See Newbrough*, 822 F. Supp. 2d at 582. Although, at this stage, Delk fails to allege sufficient facts to show these defendants' deliberate indifference or affirmative causal link between their inaction and Delk's constitutional violations, I will dismiss this claim without prejudice to allow Delk to amend the complaint.

Delk next alleges that Morehart, Moran, Barksdale, Ponton, Durbin, and Farrington were aware of Delk's sexual abuse and failed to take action to protect Delk from the "obvious harm." In order to state an Eighth Amendment claim "based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison official was deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). It is clearly established "that as a component of their duty to provide inmates with humane conditions of confinement, prison officials are required to 'take reasonable measures to guarantee the safety of the inmates.'" *Winfield v. Bass*, 106 F.3d 525, 531 (4th Cir. 1997) (citing *Farmer*, 511 U.S. at 837). The mere fact that a defendant holds a supervisory position is not sufficient to show that the defendant was actively involved in the inmate's alleged constitutional violations. *See Ross v. Reed*, 719 F.2d 689, 698 (4th Cir. 1983).

Here, Delk's conclusory allegations that Morehart, Moran, Barksdale, Ponton, Durbin, and Farrington were aware of Delk's sexual abuse and failed to protect him barely states that these defendants had the requisite knowledge of Delk's sexual abuse. Accordingly, I must dismiss all claims against Morehart, Moran, Barksdale, Ponton, Durbin, and Farrington without

prejudice to allow Delk to amend the complaint, provided that he can allege particular facts showing the personal involvement of each defendant.

With respect to Elam, Messer, Parr, and Pough, Delk fails to specify their personal involvement in Delk's underlying constitutional injuries beyond their involvement in the grievance process. Delk alleges that these defendants violated his First and Fourteenth Amendment rights by failing to ensure that Delk had a post-deprivation remedy. The only involvement Delk alleges against these defendants includes their receipt of some of his informal complaints and grievances, the denial of his grievances at intake or later stages of the grievance procedure, and the subsequent failure of his grieved conduct to cease. However, an inmate cannot bring a § 1983 claim alleging denial of a specific grievance process, *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994), nor is there liability for a prison administrator's response to a grievance process. *See Brown v. Va. Dep't of Corrs.*, No. 6:07cv00033, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)). Accordingly, I must dismiss all claims against Elam, Messer, Parr, and Pough.

**D.     Denial of Mental Health Treatment**

Delk alleges that Dr. McDuffie's "action(s) and mechanisms for screening evaluating and diagnosing Plaintiff for mental illness at the initial placement and during his stay is so deficient that it constitutes a substantial violation of [Delk's] 8th amendment and 14th amendment right." Specifically, Delk alleges that Dr. McDuffie denied him a psychiatric health appointment because Dr. McDuffie determined Delk "did not need it" despite never personally treating or diagnosing Delk. As a result of this denial, Delk alleges Dr. McDuffie's "deprivation of adequate mental health treatment for his mental illness result[ed] in significant injury and unnecessary wanton infliction of pain."

In his motion to dismiss, Dr. McDuffie argues he never had any communication or doctor patient relationship with Delk. Dr. McDuffie argues that, at the time of the complaint, Delk was housed at Red Onion, and never referred to Dr. McDuffie for care as Dr. McDuffie is a contractual service provider at Wallens Ridge State Prison. Dr. McDuffie argues he visits Wallens Ridge twice a week only to see inmates referred to him by the prison QMHP "employed by Red Onion." Dr. McDuffie asserts that, at the time of the complaint, Delk was not one of these inmates and the Red Onion QMHP never referred Delk to him. Mot. to Dismiss at 6, Docket No. 49.

### 1. *Eighth Amendment*

Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated. *See Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016). Courts treat an inmate's mental health claims as seriously as any physical health claims. *Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977).

In order to state a claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that jail officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A prison official is "deliberately indifferent" only if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[A]n inadvertent failure to provide adequate medical care" does not satisfy the standard; thus, mere negligence in diagnosis or treatment is insufficient to state a constitutional claim. *Estelle*, 429 U.S. at 105-06; *see Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard – a showing of mere negligence will not meet it."). Additionally, a lapse in professional judgment or mere disagreement with medical personnel with respect to a course of treatment

does not necessarily amount to deliberate indifference. *Farmer*, 511 U.S. at 844; *Thornhill v. Aylor*, 2016 WL 8737358, at *11 (W.D. Va. Feb. 19, 2016) (citing *Wright*, 766 F.2d at 849). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Delk repeatedly states that he was denied mental health treatment by a QMHP at Red Onion based on Dr. McDuffie's diagnosis that Delk did not need it. Although Dr. McDuffie argues he never personally communicated with or treated Delk, this is precisely the conduct that gives rise to Delk's claim: Dr. McDuffie diagnosed and ordered that Delk needed no mental health treatment without having actually screening or examining him. The denial of mental health treatment is sufficient to state that Dr. McDuffie had knowledge of Delk's mental health issues, and such denial without actually seeing Delk constitutes conduct beyond mere negligence or a lapse in professional judgment. Further, Delk adequately states he has a serious need because he was subsequently ordered mental health treatment. As such, Delk states a plausible claim against Dr. McDuffie for denial of medical care in violation of Delk's Eighth Amendment rights.

### 2. Fourteenth Amendment

Delk broadly alleges Fourteenth Amendment violations by Dr. McDuffie, asserting Dr. McDuffie employed deficient mechanisms for screening, evaluating, and diagnosing Delk. "The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall…deny to any person within its jurisdiction the equal protection of the laws." *Morrison v. Garraghty*, 239 F.3d 648, 653-54 (4th Cir. 2001). To prevail on an equal protection claim, "a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated

and that the unequal treatment was the result of intentional or purposeful discrimination." *Lee v. Johnson*, 793 F. Supp. 2d 798, 802-03 (W.D. Va. 2011) (citing *Garraghty*, 239 F.3d at 654). Here, Delk fails to set forth any facts to compare himself to other similarly situated individuals such that he can state a plausible equal protection claim.

To the extent that Delk claims that Dr. McDuffie violated his due process rights under the Fourteenth Amendment, Delk states a plausible claim. The Fourteenth Amendment affords prisoners some procedural due process rights, however, a defendant who is lawfully convicted and confined to jail loses a significant interest in his liberty for the period of the sentence. *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). "To show the deprivation of a liberty interest, plaintiff must show either that the imposed condition exceeds the imposed sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force or that the imposed condition creates an atypical or significant hardship and that the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that condition." *Spears v. Jones*, No. 7:12cv00296, 2012 WL 4460514, at *1 (W.D. Va. July 9, 2012) (citing *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)). Here, Delk plausibly states that Dr. McDuffie denied Delk mental health treatment despite knowing that Delk sought it to cope with his ongoing sexual abuse in the prison. As such, Delk states a plausible Fourth Amendment claim against Dr. McDuffie. *See Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (ruling that inmates have a clearly established constitutional "right to be free from deliberate indifference to assault and sexual abuse."). Accordingly, I must deny Dr. McDuffie's motion to dismiss.

**E.    Conspiracy**

Delk alleges several conspiracy claims. Delk alleges that Barksdale, Messer, Parr, Fleming, and Ponton conspired to cover up Adams' and Mullins' sexual, religious, and racial abuse of Delk. Likewise, Delk alleges that McDaniels, Morehart, Durbin, Farrington, Adams, and M. Mullins conspired to cover up the same sexual abuse of him. Delk alleges Barksdale, Elam, and Pough conspired with other prison officials to protect M. Mullins' misconduct. Delk alleges Messer and Parr conspired to protect Adams and M. Mullins' misconduct. Delk alleges that Barksdale, Elam, L. Mullins, and M. Mullins conspired to punish Delk and deprive him of due process and an adequate remedy regarding his disciplinary charges. Delk further alleges that Dr. McDuffie conspired with QMHP Trent, Dr. Malone, and other prison officials to deprive Delk of his mental psychological well-being.

To establish a civil conspiracy claim actionable under § 1983, a plaintiff must demonstrate that defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy," resulting in a deprivation of a federal right. *Glassman v. Arlington Cnty., Va*, 628 F.3d 140, 150 (4th Cir. 2010) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)). Merely labeling a chronological series of actions by multiple individuals as "conspiracy" or providing only a conclusory, formulaic recitation of the legal elements of conspiracy will not do. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

With regard to defendants Barksdale, Messer, Parr, Ponton, Morehart, Elam, Pough, and Farrington, Delk fails to demonstrate any "overt act" by these defendants so as to warrant further review. *Glassman*, 628 F.3d at150.

For the remaining defendants, McDaniels, Durbin, and Dr. McDuffie, Delk fails to state facts supporting a reasonable inference of a shared conspiratorial plan among any other defendant to act jointly in violating Delk's constitutional rights. *Glassman*, 628 F.3d at150. Moreover, to the extent Delk claims conspiracy under 42 U.S.C. §§ 1985 and 1986, such claims fail. *See Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995) (§1985 claim is not cognizable "whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." ); *see Cole v. Montgomery*, 2015 U.S. Dist. LEXIS 63239, at *27 (D.S.C. 2015) (quoting *Farese v. Scherer*, 342 F.3d 1223, 1232 n.12 (11th Cir. 2003) ("[Section] 1986 claims are derivative of § 1985 claims"). Moreover, Delk fails to state how McDaniels or Durbin were personally involved, individually or as part of a conspiracy, in his constitutional injuries. As such, Delk fails to state plausible claims of conspiracy against Barksdale, Messer, Parr, Ponton, Morehart, Elam, Pough, Farrington, McDaniels, Durbin, and Dr. McDuffie.

### III.

For the reasons stated, Dr. McDuffie's motion to dismiss will be denied in part as to the Eighth and Fourteenth Amendment claims and granted in part as to the conspiracy claim.[3] I will also grant defendants' motions to dismiss as to Messer, Elam, Parr, and Pough, and grant defendants motions to dismiss without prejudice as to Barksdale, Durbin, Fairington, Malone, McDaniels, Moran, Morehart, Ponton, and N.H. Scott.[4] As regards Delk's motion to change his

---

[3] Dr. McDuffie has also filed a motion to stay discovery arguing it would be "unduly burdensome" to engage in discovery should he be dismissed from this suit. Docket No. 51. However, Dr. McDuffie's motion to dismiss will be denied, Docket No. 48, and there remain plausible claims against him. As such, Dr. McDuffie's motion to stay discovery will be denied.

[4] Defendants Adams and Dr. Malone, and Yates and Phipps, have filed motions to stay discovery. Docket Nos. 56, 72. These motions will be granted, and all discovery in this matter is stayed pending further order of the court after considering defendants Adams, Yates, and Phipps' dispositive motions. With respect to Dr. Malone, I have allowed Delk to amend his complaint with regards to claims against him, and, therefore, all discovery related to Dr. Malone

17

name, Delk fails to provide any state court order or proof that he has legally changed his name. Therefore, Delk's motion to change his name on his caption is denied.[5]

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record and the *pro se* Plaintiff.

Entered this 27th day of March, 2018.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

will be stayed pending further order of the court should Delk amend his claims against Dr. Malone.

[5] Delk brings several state law claims that parallel each of his federal claims. Defendants argue that the Court should decline to exercise supplemental jurisdiction to address these claims. (Dkt. 64 at ECF 22). Inasmuch as I dispose of all Delk's federal claims, I will decline to exercise supplemental jurisdiction over his state law claims. *See* 28 U.S.C. § 1367(c). I will dismiss these claims without prejudice, leaving Delk free to pursue them in state court if he so chooses.