# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| STEVEN R. DELK, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:16cv00554 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| BRIAN MORAN, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | United States District Judge |

Steven R. Delk, also known as Ja-Quitha "Earth" Camellia, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging various violations of his constitutional rights while housed at Red Onion State Prison ("ROSP").[1] This memorandum opinion will address Dr. McDuffie's[2] motion for summary judgment. Dkt. 133. For the reasons that follow, I will grant the motion.

## I.

### A. Background

At the times relevant to this case, Delk was an inmate at ROSP. Dr. McDuffie is a private psychiatrist contracted by ROSP through his employer to provide psychiatric services to inmates. He has extensive experience as a psychiatrist, including treatment of patients demonstrating gender identity dysphoria ("GID"). As a contracted psychiatrist, Dr. McDuffie only sees inmates who have been referred to him by Qualified Mental Health Professionals ("QMHPs") at ROSP. Generally, a QMHP refers an inmate to Dr. McDuffie when the inmate has observable mental health symptoms or distress that may be treated with medication. Dr.

---

[1] I omit internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

[2] Delk incorrectly named Dr. McDuffie as "Dr. McDuffy" in his complaint. I use his correct name throughout this opinion.

McDuffie is part of a multidisciplinary team at ROSP and receives input from various individuals involved with Delk's medical care.

## B. Treatment History

In 2014 and 2015, a QMHP visited Delk at least once every ninety days to discuss and assess his mental health. Before May 15, 2015, the QMHPs did not note any issues with Delk's mental health. On May 15, 2015, Delk told a QMHP that he needed to see a psychiatrist, but he denied having any mental illness symptoms. The QMHP reported Delk's request but noted that Delk did not display any signs or symptoms of mental illness or abnormal thought content. In June 2015, QMHP Trent performed a routine mental health exam and Delk again showed no signs of a serious disorder. QMHP Trent rated Delk's mental health classification as "0," meaning no impairment noted, and specifically found that Delk: (1) had not been prescribed any psychotropic medication for mental disorders; (2) had not been diagnosed with any DSM-5[3] disorder that would lead to deteriorations, self-harm, and/or being a danger to others; (3) had not received any inpatient mental health treatment within the past two years; and (4) had no suicide attempts or incidents of self-injurious behavior within the past two years. Ex. A. at 25, dkt. 134-1.[4]

On August 9, 2015, Delk filed an informal complaint stating:

I have continued to request to see the psychologist or psychiatrist because of the intense environment I am in security level (5) and recent events that have had and

---

[3] DSM-5, or the Diagnostic and Statistical Manual of Mental Disorders, 5th Ed. (2013), is the taxonomic and diagnostic tool published by the American Psychiatric Association ("APA") as the principal authority for psychiatric diagnoses and treatment recommendations. *See United States v. Townsend*, 886 F.3d 441, 444 (4th Cir. 2018) ("We may take judicial notice of facts outside the record where the fact may not be reasonable disputed and is relevant to the matter [disputed].").

[4] For Ex. A, I use the page numbers as docketed on the electronic filing system, not the document's internal page number.

are having severe emotional effects on me. I spoke to QMHP Trent but he said he would E-mail the doctor. But I have yet to speak to him. Please explain.

*Id.* at 26. QMHP Trent responded on August 13: "Mr. Delk, I did speak to the Dr. and he determined that at this time a psychiatric appointment is not needed. Please let me know of any new symptoms. Thanks." *Id.* In August 2015, Delk did not have any observable mental health symptoms or distress, and he did not inform the QMHPs of any serious psychiatric issues.

Over a year later, on November 2, 2016, Delk submitted a grievance to the Mental Health Chief, stating that he was "a woman in a man's body." Ex. A at 2. The grievance was the first record of Delk expressing his desire to be treated as a woman, and he was referred shortly after to Dr. McDuffie for an assessment on Gender Identity Dysphoria ("GID").[5] On December 30, 2016, Dr. McDuffie evaluated Delk. Delk told Dr. McDuffie a personal history of longstanding GID issues, and Dr. McDuffie found that Delk met the criteria for GID and may also have a personality disorder. Dr. McDuffie suggested a GID assessment and noted that, "in general [Delk] is a typical example of an over 40 male to female transsexual 'coming out' and starting." *Id.* at 4. QMHP Trent, QMHP Huff, and Dr. Lee, the Mental Health Clinical Supervisor, later assessed Delk and determined that he satisfied six of the GID diagnostic criteria:

1. A marked incongruence between one's experienced/expressed gender and primary and/or secondary sex characteristics. Offender Delk reported that at age 7 he initially realized he was not like other boys and wanted to be a girl. He reports that this has been a pervasive belief throughout his lifetime.

2. A strong desire to be rid of one's primary and/or secondary sex characteristics because of a marked incongruence with one's experienced/expressed gender. Offender Delk refers to his penis as "my clitoris" and his testicles as "my ovaries." When asked about his goals for treatment, Offender Delk stated that he wanted a transformation, via surgery and hormone therapy, to the female gender. According to Dr. McDuffie's notes, Offender Delk stated he had once tried to tie a string to his penis so that it would fall off.

---

[5] "*Gender dysphoria* refers to the distress that may accompany the incongruence between one's experienced or expressed gender and one's assigned gender." APA, *DSM-5* at 451.

3

3. A strong desire for the primary and/or secondary sex characteristics of the other gender. Offender Delk repeatedly stated throughout the interview that he believes he is a female and wants to have a vagina and breasts.

4. A strong desire to be of the other gender. Offender Delk reported that he has identified as being a woman and has identified as such all of his adult life. There is not evidence or documentation in his previous VADOC records to confirm or corroborate his assertions. He refuses to sign a Confidential Release of Information for anyone having knowledge of his assertions, including his family members.

5. A strong desire to be treated as the other gender. Offender Delk has not requested to be addressed in the feminine vernacular versus the masculine vernacular. There are no records or other corroboration of a strong desire to be treated as the other gender prior to his grievance of 11/2/2016.

6. A strong conviction that one has the typical feelings and reactions of the other gender. Offender Delk does at times become very dramatic and/or flamboyant in his statements. Offender Delk has not reported that he believes he responds or reacts to situations as a female may. He has not reported that his feelings are of the opposite gender.

Psychological Report 3-4 (Jan. 19, 2017), dkt. 134-1.

The summary of Delk's November-December mental health evaluations stated that he met many of the elements of GID diagnostic criteria but that the "possibility of an attempt at secondary gain" could not be ruled out because there was no record or corroborating information of his desire to live as a female until recently. *Id.* at 4. However, the ROSP team decided to continue to monitor Delk and provided the results of their assessment to the VDOC Chief Psychiatrist for review. *Id.* Dr. McDuffie continued to treat Delk until he was transferred to Sussex I State Prison ("SISP"). Delk was transferred to SISP on December 18, 2017. He returned to ROSP on May 23, 2018. On or about January 14, 2019, Delk was transferred to SISP again, but he went back to ROSP on January 23, 2019. He was transferred to SISP again recently.

## C. Procedural History

Delk filed his initial complaint on or about November 28, 2016. Dr. McDuffie filed his motion for summary judgment on April 26, 2018, and the court sent Delk a "*Roseboro*[6] notice" on April 27, 2018. The time for Delk to respond to the *Roseboro* notice expired on May 18, 2018. However, on June 7, 2018, Delk moved for an extension until June 15, 2018. The court immediately granted the extension, but Delk still failed to respond until after the extended deadline. Dr. McDuffie then filed a motion to strike Delk's untimely response. I granted the motion and struck Delk's affidavit. As Delk has actively litigated this case, I did not dismiss his complaint for failure to prosecute pursuant to *Roseboro*.

## II. Claims

Delk asserts an Eighth and Fourteenth Amendment claim: Dr. McDuffie denied Delk treatment even though Dr. McDuffie was "clearly aware of plaintiff['s] serious mental health needs [but nevertheless] intentionally fail[ed] to provide mental health screening diagnosis, evaluation or treatment." Compl. ¶ 47. For relief, Delk seeks damages and injunctions ordering a method for effective mental health screening, the creation of a quality assurance program to ensure effective mental health treatment, and the discontinuation of the policy or procedure that denies mental health care and treatment from those who do not display disruptive behavior.[7]

## III. Standards of Review

### A. Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the

---

[6] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).
[7] Delk lists many other requests for relief that I do not find relevant here.

5

movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The dispute over a material fact must be genuine, "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). As such, the moving party is entitled to summary judgment if the evidence supporting a genuine issue of material fact "is merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 250.

The moving party bears the burden of proving that judgment on the pleadings is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party meets this burden, then the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, the court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 322-324; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence set forth must meet the "substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993).

Since Delk failed to timely respond and I granted Dr. McDuffie's motion to strike Delk's responsive affidavit, I will analyze Dr. McDuffie's motion and Delk's complaint to determine whether Dr. McDuffie is entitled to summary judgment.[8]

### B. *Pro Se* Pleadings

Delk is proceeding *pro se* and, thus, entitled to a liberal construction of the pleading. *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 90-95 (2007). However, "principles requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). The Fourth Circuit has explained that "though *pro se* litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Id.* at 1276. "A court considering a motion [for summary judgment] can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### C. Section 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

---

[8] The Fourth Circuit has held:
Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to "a judgment as a matter of law." The failure to respond to the motion does not automatically accomplish this. Thus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.
*Custer v. Pan Amer. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) (quoting Fed. R. Civ. P. 56(c)).

7

Notably, a plaintiff must sufficiently allege a defendant's personal act or omission leading to a deprivation of a federal right. *See Fisher v. Wash. Metro. Area Transit Author.*, 690 F.2d 1133, 1142-43 (4th Cir. 1982), *abrogated on other grounds by Cty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991). Negligent deprivations are not actionable under § 1983. *See, e.g., Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Pink v. Lester*, 52 F.3d 73, 77 (4th Cir. 1995).

## IV. Discussion

Delk alleges: Dr. McDuffie's "action[s] and mechanisms for screening evaluation and diagnosing Plaintiff for mental illness at the initial placement and during his stay is so deficient that it constitutes a substantial violation of [his] 8th amendment and 14th amendment right." Compl. 7. He specifically asserts that Dr. McDuffie denied him a psychiatric health appointment because Dr. McDuffie determined that Delk did not need an appointment, despite never personally treating or diagnosing Delk. Delk claims that the deprivation of mental health treatment resulted in significant injury and unnecessary wanton infliction of pain. Delk also contends that Dr. McDuffie's reliance on policy ignored a pervasive and unreasonable risk that Delk would be unable to receive mental health care unless he was horrifically suffering, disruptive, and suicidal. *Id.* at ¶ 53.

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Makdessi v. Fields*, 789 F.3d 126, 132 (4th Cir. 2015). A prison official will not be held liable for deliberate indifference to a prisoner's medical needs unless two requirements are met. First, the plaintiff must satisfy the objective component: (1) that he suffered "a serious or significant physical or emotional injury," or (2) "a substantial risk of such serious harm." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "An inmate alleging a deliberate indifference claim must establish that his medical condition was objectively serious—

that is, 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Drakeford v. Mullins*, 678 F. App'x 185, 186 (4th Cir. 2017) (per curiam) (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)).

Second, the subjective prong requires proof that "the officials acted with a sufficiently culpable state of mind." *De'Lonta*, 330 F.3d at 634. The defendant must know "both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016); *see also Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard."); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). The alleged deprivation must be extreme; "mere negligence" is not enough. *Scinto*, 841 F.3d at 225; *see also Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990) *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("The treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Deliberate indifference may be demonstrated by either actual intent or reckless disregard. . . . Nevertheless, mere negligence or malpractice does not violate the eighth amendment.").[9]

---

[9] To any extent Delk attempts to raise a non-medical Eighth Amendment claim against Dr. McDuffie, such a claim fails because Delk has not alleged that Dr. McDuffie has any control over or knowledge of: his housing; the time he spent in prison; ongoing sexual harassment; or assaults. *See* McDuffie Aff. ¶ 4, dkt. 134-2. Tellingly, when Delk filed his complaint, he had not even met Dr. McDuffie yet. Furthermore, Dr. McDuffie is not an employee of the VDOC. *See Farmer*, 511 U.S. at 837 (requiring awareness); 28 U.S.C. § 1915(e)(2)(B)(ii) (a court may *sua sponte* dismiss an *in forma pauperis* plaintiff's claim for failure to state a claim on which relief may be granted).

Lastly, "questions of medical judgment are not subject to judicial review." *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *see also Calvert v. Sharp*, 748 F.2d 861, 862 n.2 (4th Cir. 1984) (An inmate's "complaints about the quality of the medical treatment [] do not amount to deliberate indifference to serious medical needs, [which is] the constitutional test.") *abrogated on other grounds by West*, 487 U.S. at 42; *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990) ("Disagreements between an inmate and a physician over treatment do not state a claim under § 1983.").

Dr. McDuffie asserts that Delk cannot establish deliberate indifference. I agree. Prison resources are limited, and it is not constitutionally mandated that prisoners with no complaints or symptoms see specialists. *See Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977) ("The right to treatment is, of course, limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable."). Before November 2016, Delk failed to mention any substantive issues with his mental health despite regular visits from QMHPs. Ex. A, at 10-25. Delk's August 2015 bare assertion that he needed to see a psychiatrist did not put Dr. McDuffie on notice of any serious mental health issues. Delk had not stated or presented any symptoms of a mental health condition to any of the QMHPs who regularly saw him, and he had not had any mental health complaints for several years. Therefore, Dr. McDuffie, reviewing the record before him and relying on his expertise, had no reason to believe that Delk's vague request for a psychiatrist required a psychiatric appointment.

Furthermore, while Dr. McDuffie determined that Delk did not need a psychiatric appointment in late 2015, he did not foreclose all mental health treatment. Delk continued to receive regular visits and treatment from QMHPs. When Delk later asserted symptoms of

serious mental health conditions in November 2016, QMHPs quickly referred him to Dr. McDuffie, and Dr. McDuffie saw Delk the following month. Since the referral, Dr. McDuffie continuously treated Delk while he was at ROSP, and Dr. McDuffie, as part of Delk's health management team, suggested a course of treatment at SISP.

Therefore, drawing all reasonable inferences in favor of Delk, Dr. McDuffie was not deliberately indifferent to Delk's serious medical needs because Dr. McDuffie did not have the knowledge requisite to draw the inference that he was ignoring Delk's serious condition. Instead, Delk's claim is mere disagreement with Dr. McDuffie's professional medical opinion that a psychiatric appointment was unnecessary in 2015. At most, Dr. McDuffie was negligent by not inquiring further into Delk's request. Regardless, medical malpractice, negligence, or disagreement with the course of treatment cannot sustain a constitutional claim. Therefore, I conclude that Delk fails to establish a genuine dispute of material fact regarding Dr. McDuffie's deliberate indifference, and I will grant Dr. McDuffie's motion for summary judgment and dismiss all constitutional claims against him.[10]

## V. Conclusion

Accordingly, Dr. McDuffie's motion for summary judgment will be granted in accordance with the accompanying order.

**ENTER** this 11th day of March, 2019.

---

[10] The Fourteenth Amendment incorporated the Eighth Amendment to apply against state actors. *See Louisiana ex rel Francis v. Resweber*, 329 U.S. 459, 463 (1947) (the Due Process Clause of the Fourteenth Amendment incorporates the Eighth Amendment's guarantee against cruel and unusual punishment). To any extent Delk attempts to raise an independent Fourteenth Amendment claim against Dr. McDuffie, his allegations fail to state a claim. *See Prieto v. Clarke*, 780 F.3d 245, 251 (4th Cir. 2015) (An inmate's allegations of failure to provide adequate medical care by prison officials "fall squarely within the ambit of the Eighth Amendment—not the Due Process Clause."). Therefore, I will dismiss any such claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE