# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| STEVEN R. DELK, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:16cv00554 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| BRIAN MORAN, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | United States District Judge |

Steven R. Delk, also known as Ja-Quitha "Earth" Camellia, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging various violations of his constitutional rights while housed at Red Onion State Prison ("ROSP").[1] This memorandum opinion will address Defendants Nurse Yates and Nurse Phipps' motion for summary judgment. Dkt. 86. For the reasons that follow, I will grant the motion.

## I. Background

Delk is an inmate at ROSP. Nurses Yates and Phipps are employed by ROSP as part of the medical staff. The record establishes the following.

### A. Facts Related to Nurse Yates

On July 12, 2015, a correctional officer contacted Nurse Yates to inquire whether oleocapsicum ("OC") spray could be used on Delk. Under ROSP policy, the only medical conditions that are considered contraindications for OC spray are (1) acute eye infection, and (2) severe chronic obstructive pulmonary disease ("COPD"). Nurse Yates reviewed Delk's medical records, determined that he did not possess either condition, and reported the same to the correctional officer. Delk was then sprayed with OC spray.

---

[1] I omit internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

After he was sprayed, Nurse Yates attended Delk. During her evaluation, she determined that Delk was standing, alert, oriented to person, place, and time, and was in no visible distress. (Yates Decl. ¶ 7, dkt. 87-1); (Med. R. 44, dkt. 87-3). She noted that his respiration was even and unlabored, his vital signs were normal, and his oxygen saturation[2] was at 99%. (Med. R. 44). Based on her findings, Nurse Yates medically cleared Delk and told him to follow up with the medical department as needed. *Id.*

On July 13, 2015, Delk filed and emergency grievance and went to the medical department with complaints of burning in his mouth, chest, and stomach from the chemical spray. (Yates Decl. ¶ 9). Medical staff noted no acute distress and that his breathing was even and unlabored. (Med. R. 44). Delk was given a three-day pepto bismol prescription and discharged.

On July 17, 2015, Delk was seen at sick call. He complained that he had had a sinus/migraine headache, sinus pain, and a runny nose since he was sprayed with OC spray on July 12. (Med. R. 43). Once again, medical staff noted that his respirations were even and unlabored, his vital signs were normal, and his oxygen saturation was at 98%. *Id.* The attending nurse, following nursing guidelines, prescribed Delk with an antihistamine and Motrin for five days. *Id.*

### B. Facts Related to Nurse Phipps

---

[2] Oxygen saturation is the estimated measurement of oxygen-saturated hemoglobin relative to total hemoglobin in the blood by a pulse oximeter device. Normal blood oxygen levels are considered 95-100%. Hypoxemia Symptoms, Mayo Clinic, *available at* https://www.mayoclinic.org/symptoms/hypoxemia/basics/definition/sym-20050930; *see United States v. Townsend*, 886 F.3d 441, 444 (4th Cir. 2018) ("We may take judicial notice of facts outside the record where the fact may not be reasonably disputed and is relevant to the matter [contested].").

At all times relevant to this suit, Nurse Phipps was the "Health Authority" at ROSP. The Health Authority fulfills primarily administrative duties—she primarily supervised nursing staff and responded to medical grievances. (Phipps Decl. ¶ 4, dkt. 87-2). The Health Authority does not create or establish the policy which designated the conditions considered contraindications to OC spray. However, Nurse Phipps, like all nurses at ROSP, was required to follow the policy.

On July 21, 2015, Delk submitted an informal complaint stating:

> The medical administrator and Ms. D. Yates showing a reckless disregard for my physical and mental well-being deprived me of the standard of care owed to me as an asthmatic; on 7-12-15 Ms. D. Yates approved the use of a chemical munition stating it would not jeopardize my health or trigger an asthma attack (so I was sprayed). Ms. Yates approval was not a medical decision.

(Med. R. 1). As the Health Authority, Nurse Phipps investigated the complaint. She reviewed Delk's medical records and confirmed that Nurse Yates had followed protocol by reviewing Delk's medical history for contraindications to OC spray and relaying that information officers. Nurse Phipps also determined that Nurse Yates evaluated Delk after he was exposed to OC spray, noting that he suffered no serious adverse medical effects. (Phipps Decl. ¶ 8). Nurse Phipps then responded to the complaint, advising Delk: "Asthma is not a contraindication for the use of OC spray. [Nurse Yates] was correct when she gave permission for the use of OC spray by noting no contraindication noted." *Id.*

## II.

Delk filed his initial complaint on or about November 28, 2016, Defendants filed their motion for summary judgment on September 25, 2017, and Delk responded on October 30, 2017, making the motion ripe for disposition. He asserts the following claims:

(1) Nurse Yates was deliberately indifferent to Delk's serious medical needs when she approved the use of OC spray on Delk despite knowing that he suffered from asthma in violation of the Eighth and Fourteenth Amendment and Va. Const. Art. I §§ 9, 11;

(2) Nurse Phipps was deliberately indifferent to Delk's serious medical needs when she knowingly created and enforced a custom, policy, or rule which authorized Nurse Yates to approve the use of OC spray on asthmatics in violation of the Eighth and Fourteenth Amendments and Va. Const. Art. I, §§ 9, 11;

(3) Nurse Phipps knowingly authorized Nurse Yates' unlawful actions as her supervisor; and

(4) Nurses Phipps and Yates conspired with each other and Correctional Officer Adams to retaliate against Delk because of Delk's race, religion, and sexuality.

For relief, Delk requests damages and injunctive relief mandating that the defendants: video record all OC spray incidents, abolish the policy allowing nurses to permit OC spray use on respiratory disease sufferers; and transfer Delk to a different prison.[3]

### III. Standards of Review

#### A. Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The dispute over a material fact must be genuine, "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264

---

[3] Delk lists several other requests for relief that I do not find relevant here.

F.3d 459, 465 (4th Cir. 2001). As such, the moving party is entitled to summary judgment if the evidence supporting a genuine issue of material fact "is merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 250.

The moving party bears the burden of proving that judgment on the pleadings is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party meets this burden, then the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, the court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 322-324; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence set forth must meet the "substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993).

### B. *Pro Se* Pleadings

Delk is proceeding *pro se* and, thus, entitled to a liberal construction of the pleading. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 90-95 (2007). However, "principles requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). The Fourth Circuit has explained that "though *pro se* litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Id.* at 1276. "A court considering a motion [for

summary judgment] can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### C. Section 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Notably, a plaintiff must sufficiently allege a defendant's personal act or omission leading to a deprivation of a federal right. *See Fisher v. Wash. Metro. Area Transit Author.*, 690 F.2d 1133, 1142-43 (4th Cir. 1982), *abrogated on other grounds by Cty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991). Negligent deprivations are not actionable under § 1983. *See, e.g., Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Pink v. Lester*, 52 F.3d 73, 77 (4th Cir. 1995).

### IV.

At the threshold, several of Delk's allegations fail as a matter of law. First, Va. Const. Art. I, §§ 9 and 11 are not "self-executing" under these circumstances. For a constitutional provision to be "operative," it must be self-executing or have associated legislation that allows for a cause of action. *Robb v. Shockoe Slip Found.*, 324 S.E.2d 674, 681-82 (Va. 1985); *Gray v. Va. Sec'y of Transp.*, 662 S.E.2d 66, 103 (Va. 2008). A provision is generally not self-executing if "it merely indicates principles, without laying down rules by means of which those principles may be given force of law." *Robb*, 324 S.E.2d at 681-82. Va. Const. Art. I § 9[4] "states only the

---

[4] Article I, § 9 asserts:
   That excessive bail ought not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted; that the privilege of the writ of habeas corpus shall not be suspended unless when, in cases of invasion or

6

principle that cruel and unusual punishment ought not to be inflicted, without any attendant rules"; therefore, "§ 9 is not self-executing." *Quigley v. McCabe*, No. 2:17cv70, 2017 WL 3821806, at *5 (E.D. Va. Aug. 30, 2017). Meanwhile, § 11[5] is Virginia's Due Process Clause and is self-executing. *Id.* at *6. However, § 11 is self-executing "only in the context of claims of damages to or takings of property." *Id.*; s*ee also Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 728 (E.D. Va. 2015) ("Although the due process provision of the Virginia Constitution is self-executing, this has only been held to be true with regard to *property* deprivation."). Therefore, Delk fails to state a cognizable claim based on the Constitution of Virginia, and I will grant the motion for summary judgment as to those claims.

Second, to any extent Delk attempts to assert an independent Fourteenth Amendment claim, the claim must fail. An inmate's allegations of failure to provide adequate medical care by prison officials "fall squarely within the ambit of the Eighth Amendment—not the Due Process Clause." *Prieto v. Clarke*, 780 F.3d 245, 251 (4th Cir. 2015). Therefore, Delk cannot tack a Fourteenth Amendment claim to allegations that are clearly within the ambit of the Eighth Amendment. I will dismiss his independent Fourteenth Amendment claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Third, Delk asserts that Nurse Phipps is liable for the actions of Nurse Yates because she supervised her. However, *respondeat superior* liability is not available in § 1983 cases. *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Liability under § 1983 requires personal involvement in the alleged constitutional violations, and, drawing all reasonable facts and inferences in favor of Delk, he fails to allege that Nurse Phipps had any personal involvement.

---

        rebellion, the public safety may require; and that the General Assembly shall not pass any bill of attainder, or any ex post facto law.
    [5] Va. Const. Art. I, § 11 states in relevant part: "That no person shall be deprived of his life, liberty, or property without due process of law."

*See Iqbal*, 556 U.S. at 677. Therefore, I will grant the motion for summary judgment as to the *respondeat superior* claims against Nurse Phipps.

Fourth, Delk asserts that the Defendants and a correctional officer conspired to retaliate against him by using OC spray despite his asthma because of his race, religion, and sexuality. "To establish a civil conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in plaintiff's deprivation of a constitutional right." *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996). A plaintiff must make more than a naked assertion of conspiracy. *Phillips v. Mashburn*, 746 F.2d 782, 786 (11th Cir. 1984).

Delk's conspiracy allegations are conclusory and not entitled to be taken as true because he merely nakedly asserts that the Defendants conspired to violate his rights. He has not plausibly alleged that Nurse Yates or Nurse Phipps agreed or had some common design to deprive him of his rights. The record establishes that Nurse Yates was not involved in the spraying of Delk with OC spray—she merely followed ROSP protocol by reviewing Delk's medical records and reporting to security that Delk did not have any contraindications to chemical spray. Yates Decl. ¶¶ 5-6, 14. Furthermore, Nurse Phipps took no part whatsoever in the OC spray incident—she merely agreed, after the fact, with the reasoning of Nurse Yates' decision. Phipps Decl. ¶¶ 6-7, 12. Therefore, drawing all reasonable facts and inferences in favor of Delk, he has not demonstrated a genuine dispute of material fact, and I will grant the motion for summary judgment as to the conspiracy claims.

V.

Only Delk's Eighth Amendment claims of denial of adequate medical care remain. "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones."

8

*Makdessi v. Fields*, 789 F.3d 126, 132 (4th Cir. 2015). As a basic principle, prisoners have the right to receive adequate medical care while incarcerated. *Sincto v. Scarberry*, 841 F.3d 219, 236 (4th Cir. 2016). To state a claim for denial of medical care, a plaintiff must allege facts demonstrating that jail officials were deliberately indifferent to a serious medical need. The test has two prongs. First, the plaintiff must satisfy the objective component: (1) that he suffered "a serious or significant physical or emotional injury," or (2) "a substantial risk of such serious harm." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "An inmate alleging a deliberate indifference claim must establish that his medical condition was objectively serious—that is, 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Drakeford v. Mullins*, 678 F. App'x 185, 186 (4th Cir. 2017) (per curiam) (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)).

The second component, the subjective prong, requires proof that "the officials acted with a sufficiently culpable state of mind." *De'Lonta*, 330 F.3d at 634. The defendant must know "both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016); *see also Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard."); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). The alleged deprivation must be extreme; "mere negligence" is not enough. *Scinto*, 841 F.3d at 225; *see also Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990) *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("The treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable

to fundamental fairness. Deliberate indifference may be demonstrated by either actual intent or reckless disregard. . . . Nevertheless, mere negligence or malpractice does not violate the eighth amendment.").

### A. Nurse Yates

Delk asserts that Nurse Yates approved the use of OC spray on July 12, 2015 despite knowing of Delk's asthma and without taking precautionary measures to ensure that Delk's health was not in danger. He alleges that Nurse Yates was deliberately indifferent because she should have known that OC spray causes severe pain and distress to the respiratory system, and that because of his asthma, Delk would suffer acutely heightened symptoms. He also states that she knowingly acted outside the area of her expertise when she approved the use of OC spray, her evaluation was too short, and she failed to measure his peak expiratory flow.[6]

Nurse Yates responded that ROSP protocol requires correctional officers to contact a nurse prior to the use of OC spray to determine if the inmate has any medical condition that would prohibit its use. Yates. Decl. ¶ 4. "The medical conditions that are considered contraindications for use of chemical spray are (1) acute eye infection and (2) severe chronic obstructive pulmonary disease." *Id.* Contraindications are "established by the Medical Authority, i.e. site physician, at ROSP." *Id.* After a nurse determines the inmate does not have any contraindicative conditions, she relays that information to security. *Id.* at ¶ 5. When chemical spray is used on an inmate, medical personnel evaluate him to confirm that he is medically stable. *Id.* If the inmate suffers any serious adverse effects from the spray, the nurse treats him and/or refers the inmate to a physician. *Id.*

---

[6] Peak expiratory flow is a person's maximum speed of exhalation. What is peak flow measurement?, Johns Hopkins Medicine, *available at* https://www.hopkinsmedicine.org/healthlibrary/test_procedures/pulmonary/peak_flow_measurement_92,p07755.

Even assuming asthma constitutes a serious medical need, Delk fails to demonstrate that Nurse Yates was deliberately indifferent. Nurses may act deliberately indifferent when they ignore obvious risks to an inmate's health in following a physician's orders. As part of the medical staff, "nurses may generally defer to instructions by physicians, 'but that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient.'" *Badu v. Broadwell*, No. 5:11-CT-3192, 2013 WL 286262, at *9 (E.D.N.C. Jan. 24, 2013) (quoting *Holloway v. Del. Cty. Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012)).

At the threshold, it is important to note that chemical spray is not designed to be comfortable—its purpose is to inflict pain and debilitate. By its very nature, properly used chemical spray still "possesses inherently dangerous characteristics capable of causing serious and perhaps irreparable injury to the victim." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). And yet, chemical spray is a generally accepted non-lethal means of controlling unruly inmates, which may in fact be "much more humane and effective than a flesh to flesh confrontation with an inmate." *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996); *see also Bailey v. Turner*, 736 F.2d 963 (4th Cir. 1984); *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000) (collecting cases).

Delk complains that Nurse Yates failed to consider his health condition. However, the record establishes that the opposite is true. When the correctional officer contacted Nurse Yates on July 12, 2015, she followed Medical Authority protocol, determined that Delk did not have either medical condition considered a contraindication, and reported her findings. Yates Decl. *Id.* at ¶ 6. Nurse Yates knew that Delk had asthma, and that OC spray would cause respiratory distress. However, she attests that she was prepared to administer a nebulizer treatment and refer Delk to a physician if he exhibited signs of an asthma attack. *Id.* at ¶ 8. Delk displayed no such

symptoms. *Id.* Nurse Yates was not constitutionally required to prevent all harm from Delk, or specifically harm to his respiratory system. Instead, the Constitution mandates that prison staff not act in a way that risks substantial harm to an inmate's health. Here, Nurse Yates minimized potential severe harm by: (1) following the site physician's directive by reviewing Delk's medical chart before spray was used; and (2) providing treatment after Delk was sprayed.

Furthermore, even if Nurse Yates knew that chemical spray can exacerbate asthma, Delk fails to demonstrate that Nurse Yates drew the inference that Delk would be subject to a risk of substantial harm. First, OC spray is universally recognized as a dangerous substance, but accepted as a method of controlling inmates. Second, Nurse Yates was entitled to rely on the site physician's determination of contraindications.[7] Third, Delk fails to demonstrate that Nurse Yates had reason to believe that Delk would suffer any more than the usual harm that occurs when an inmate is pepper sprayed. Fourth, if Delk did incur more severe asthmatic injuries from the spray, Nurse Yates states that she was prepared to perform necessary treatment and/or refer him to a physician. Lastly, it is not the court's role to second-guess the good faith medical judgments of prison medical staff regarding the treatment of inmates. *See, e.g.*, *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975).

Drawing all facts and reasonable inferences in favor of Delk, he has failed to demonstrate that Nurse Yates acted with deliberate indifference toward his serious medical need. Instead, Delk merely vehemently disagrees with the Medical Authority's policy that does not list asthma as a contraindication to OC spray. Nurse Yates was: (1) entitled to rely on the Medical

---

[7] I also note that the Medical Authority only found *severe* COPD to be a respiratory-related contraindication. An inmate with moderate COPD, like asthma, could certainly suffer severe adverse effects from chemical spray, but the site physician decided that only severe COPD would be a contraindication. Delk fails to establish that Nurse Yates' compliance with the Medical Authority's determination was extreme or that she ignored a risk of substantial harm.

Authority's protocol; and (2) negligent, at most, for following the established rules. Allegations of negligence cannot sustain a constitutional claim. Therefore, I will grant the motion for summary judgment as to Nurse Yates.

### B. Nurse Phipps

Delk's Eighth Amendment claim against Nurse Phipps also fails, because Nurse Phipps (1) did not create, enforce, or establish the rule that allowed for asthmatics to be sprayed, and (2) she was entirely uninvolved in OC spray incident. First, Delk alleges that Nurse Phipps created and/or enforced the rule. However, Nurse Phipps convincingly states that she had no rule-making or enforcement power. Instead, the record establishes that the Medical Authority, the site physician, created the protocol that all nurses must follow. Phipps. Aff. ¶ 5 ("The contraindications are established by the Medical Authority, i.e. site physician, at Red Onion State Prison. Asthma is not a contraindication for use of chemical spray. As the Health Authority, I did not create or establish this policy but have to follow it as do all the nurses at Red Onion State Prison."); *see also* Yates Aff. ¶ 4. As to rule enforcement, Delk's conclusory allegations that Nurse Phipps enforced the contraindication rule lacks any factual support whatsoever—he nakedly asserts that she created and enforced the contraindication rule. Such allegations are not entitled to be taken as true.[8] Therefore, drawing all facts and reasonable inferences in favor of the non-moving party, Delk fails to demonstrate a genuine dispute of reasonable fact as to his

---

[8] Regardless, I have already concluded that Nurse Yates' actions in following the Medical Authority's rules on OC spray and contraindications did not violate the Constitution. Therefore, even if Nurse Phipps enforced the contraindications rule, she also did not violate the Constitution. *See Badu*, 2013 WL 286262, at *9; *Russell,* 528 F.2d at 319.

Eighth Amendment claim against Nurse Phipps. Accordingly, I will grant the motion for summary judgment as to those claims.[9]

## VI. Conclusion

Defendants' motion for summary judgment will be granted in accordance with the accompanying order.

The Clerk is directed to send a copy of this memorandum opinion to the parties.

**ENTER** this  15th day of March, 2019.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

[9] To any extent Delk attempted to raise a claim regarding Nurse Phipps' treatment of his grievances, the argument fails. In general, prisoners do not have a constitutional right to access a state's grievance procedure or to have their grievances handled in any particular manner. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Conrad v. Akers*, No. 7:10CV00560, 2011 WL 3847017, at *7 (W.D. Va. Aug. 30, 2011) (refusing to recognize a constitutional right in the grievance procedure when "grievances were shuffled from office to office with no permanent resolution to them"). Therefore, allegations that Nurse Phipps mishandled Delk's grievances cannot sustain a § 1983 claim, and I will dismiss any such claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).